# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 24-CR- 203 (RBW) |
| v. | 18 U.S.C. § 231(a)(3) |
| ALLAN JENNINGS, | 18 U.S.C. § 1361 |
| Defendant. | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Allan Jennings, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows

and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. The defendant, Allan Jennings, traveled with his wife from their home in Hillsboro Tennessee, to Washington, D.C., on January 5, 2021. The purpose of Jennings' trip was to attend the "Stop the Steal" rally and election-related events occurring in Washington, D.C., on January 6, 2021.

9. On January 6, 2021, after attending the rally, Jennings walked to the U.S. Capitol, where a large crowd had gathered to protest Congress's certification of the Electoral College votes for the 2020 Presidential Election. Jennings wore a red "TRUMP" hat, a dark jacket, a sweatshirt with a light gray hood, and dark glasses. Jennings also carried a backpack and a pair of black

medical scissors, which had a glass-breaking-end. From the west, Jennings entered U.S. Capitol grounds, where he joined a crowd that was assembling on the Capitol's West Plaza.

10. The West Plaza crowd grew violent and—by approximately 2:40 p.m.—had moved its way onto the Inaugural Stage and Lower West Terrace.

11. Beginning at approximately 2:42 p.m., numerous members of this mob attacked members of the U.S. Capitol Police and Metropolitan Police Department who were lawfully engaged in the performance of their official duties defending an entrance to the U.S. Capitol on the Lower West Terrace known as "the Tunnel." Over the course of more than two hours, members of the mob swarmed the Tunnel, where police had fallen-back after the crowd overwhelmed officers on the West Plaza. In and around the Tunnel, members of the mob threw items at police, struck police with items, sprayed police with chemical irritants, pushed against the police, and stole items from police defending the Tunnel.

12. At approximately 2:41 p.m., Jennings was among the first few rioters to pursue retreating police officers into the Tunnel from the Lower West Terrace. Upon entering the Tunnel, Jennings moved forward toward a double set of closed glass doors that separated the mob from police officers and the Tunnel hallway leading deeper into the Capitol building. The police had closed the doors to keep the mob from venturing further down that hallway, and they began to form a line to further prevent the mob from advancing.

13. As more of the crowd entered the Tunnel to pursue the police, Jennings—at approximately 2:42 p.m.—pulled out his pair of medical scissors and used the scissors' glass-breaking end to tap the glass on one of the glass doors. Jennings then pulled back the scissors and quickly struck the glass multiple times, shattering the door's glass on the second attempt. The damage to the door cost $825 to repair.

14. After Jennings shattered the glass, the mob moved through the now broken sets of doors and began its push against the police line. Jennings made his way toward the front of the mob, where he put his hands on a police officer's shield.

15. Jennings then returned to the middle of the mob in the Tunnel, before exiting the Tunnel at approximately 2:47 p.m. and returning to the Inaugural Stage and Lower West Terrace.

### *Elements of the Offense*

16. The parties agree that Obstructing Officers During a Civil Disorder, 18 U.S.C. § 231(a)(3), requires the following elements:

   a. The defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

   b. At the time of the defendant's act, the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder

   c. The civil disorder in any way or degree obstructed, delayed, or adversely affected commerce, the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

17. The parties agree that Destruction of Government Property, 18 U.S.C. § 1361, requires the following elements:

   a. The defendant injured, damaged, or destroyed property.

   b. The defendant did so willfully.

   c. The property involved was property of the United States, or of any department or agency thereof.

***Defendant's Acknowledgments***

18.     The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he knowingly entered the restricted area on the west front of the U.S. Capitol building, as part of a civil disorder, and acted to obstruct, impede, or interfere with law enforcement officers who were engaged in the lawful performance of their duties incident to and during that civil disorder, which obstructed, delayed, or adversely affected commerce or the performance of a federally protected function. The defendant also admits that he willfully injured, damaged, or destroyed a glass door inside the Tunnel at the U.S. Capitol, which property of the United States, or of any department or agency thereof.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:    */s/ Nathaniel K. Whitesel*
        NATHANIEL K. WHITESEL
        Assistant United States Attorney
        DC Bar No. 1601102
        601 D Street NW
        Washington, DC 20530
        nathaniel.whitesel@usdoj.gov
        (202) 252-7759

## DEFENDANT'S ACKNOWLEDGMENT

I, Allan Jennings, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 3/22/24

_____
Allan Jennings
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 3/22/24

_____
Bryan Hoss
Attorney for Defendant